UNITED STATES of America, Plaintiff–Appellee,

v.

Angel GARCIA–GOMEZ, Defendant–Appellant.

No. 03–30378.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2004.

Filed Aug. 20, 2004.

Amanda J. Bjur, Yakima, WA, for the defendant-appellant.

Donald E. Kresse, Jr., Assistant United States Attorney, Yakima, WA, for the plaintiff-appellee.

Before TASHIMA, PAEZ, and BEA, Circuit Judges.

TASHIMA, Circuit Judge:

Angel Garcia–Gomez ("Garcia") was convicted on a plea of guilty of being an alien

"found in" the United States after deportation. *See* 8 U.S.C. § 1326. The district court sentenced him to 46 months' imprisonment. In calculating the sentence, the judge included a 16–point increase of Garcia's offense level and a three-point increase of his criminal history score because of his prior conviction and 31–month sentence for delivery of cocaine. The court also included a one-point increase in Garcia's criminal history score for his prior conviction and 90–day jail term for "Third Degree Driving While License Suspended" and "Refus[al] to Give Information / Cooperate." On appeal, Garcia argues that the court erred in taking his entire 31–month sentence into account in calculating his criminal history category and offense level because he was sent to a "work ethic camp" program where he earned three days' credit for each day served and he was released after being in custody for less than eight months. He also contends that the court erred in denying him a downward departure on the ground that his criminal history was overstated. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## I

Garcia entered the United States for the first time when he was 16 years old. During his time in this country, he has been convicted of several crimes against the State of Washington, but only two are pertinent to this appeal.

In 1995, Garcia was convicted of delivery of cocaine in Washington State Court and sentenced to 31 months in jail. After he had served one month of his sentence, the court amended the judgment. The amended judgment reiterated the sentence of 31 months, but recommended that Garcia serve his sentence at a Washington Department of Corrections "work ethic camp." At the time the sentence was amended, state law required that when an offender successfully completes the work ethic camp program, the Department of Corrections must "convert the period of work ethic camp confinement at a rate of one day of work ethic camp confinement to three days of total standard confinement." WASH. REV. CODE § 9.94A.137(2) (1995). Garcia, in fact, completed the work ethic camp program and was released after serving less than eight months of his sentence. Upon his release from custody, he was deported to Mexico.

In 1996, Garcia, having illegally made his way back to the United States, was arrested and convicted in Washington State Court of "Third Degree Driving While License Suspended" and "Refus[al] to Give Information / Cooperate." He was given a suspended sentence of 90 days in jail.

In the instant case, Garcia was convicted of being an alien "found" in the United States after deportation. *See* 8 U.S.C. § 1326. His presentence report ("PSR") identified the base offense level for the crime as eight, *see* U.S. SENTENCING GUIDE-LINES MANUAL ("U.S.S.G.") § 2L1.2(a) (2002),[1] but recommended a 16–point increase in his offense level because of Garcia's 1995 conviction and 31–month sentence for delivery of cocaine, *see* U.S.S.G. § 2L1.2(b)(1)(A)(I). The PSR also recommended that Garcia be assessed eight criminal history points, which included three points for his 1995 conviction and

---

1. All citations are to the 2002 Sentencing Guidelines, which were in effect both when Garcia–Gomez committed the offense and when he was sentenced. *See United States v. Alfaro*, 336 F.3d 876, 881 (9th Cir.2003)

(holding that the guidelines in effect at the time the defendant is sentenced must be applied, unless doing so would pose an *ex post facto* problem).

31–month sentence for delivery of cocaine, *see* U.S.S.G. § 4A1.1(a), and one point for his 1996 conviction for "Third Degree Driving While License Suspended" and "Refus[al] to Give Information / Cooperate," *see* U.S.S.G. § 4A1.1(c).

The court followed the PSR's recommendation, finding that Garcia's total offense level, before departures, was 24. After reducing his offense level by two points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), one point for pleading guilty, *see* U.S.S.G. § 3E1.1(b), and two points for "cultural assimilation," *see* U.S.S.G. § 5K2.0; *United States v. Lipman*, 133 F.3d 726, 730 (9th Cir.1998), the court found Garcia's adjusted offense level to be 19. The court also agreed with the PSR's recommendation that Garcia be assessed eight criminal history points. Garcia moved for a downward departure on the ground that the inclusion of a criminal history point for his 1996 conviction resulted in overstating his criminal history. That motion was denied. The district court sentenced Garcia to the guideline minimum of 46 months.

## II

■ We review the district court's interpretation of the United States Sentencing Guidelines *de novo*. *United States v. Franklin*, 321 F.3d 1231, 1236 (9th Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 161, 157 L.Ed.2d 106 (2003). We review its application of the Guidelines to a particular case for abuse of discretion. *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1038 (9th Cir.2002).

## III

### A. Calculation of Garcia's Offense Level and Criminal History Score: The Effect of His Early Release from Custody

The Sentencing Guidelines require that three points be added to a defendant's criminal history score for each prior "sentence of imprisonment" that exceeds one year and one month. U.S.S.G. § 4A1.1(a). If the sentence of imprisonment is at least 60 days, but less than 13 months, two points must be added to the defendant's criminal history score. U.S.S.G. § 4A1.1(b). When calculating a defendant's criminal history score, the sentencing judge must take into account "the maximum sentence imposed" for each prior sentence of imprisonment. U.S.S.G. § 4A1.2(b)(1). However, if any part of a prior sentence of imprisonment has been suspended, the judge must take into account only the portion of the sentence that has not been suspended. U.S.S.G. § 4A1.2(b)(2).

■ The guidelines provide that the base offense level for a conviction of unlawfully entering or remaining in the United States after deportation is eight. U.S.S.G. § 2L1.2(a). If the deportation occurred after a criminal conviction for a drug trafficking offense, then the offense level is increased according to the sentence imposed. U.S.S.G. § 2L1.2(b)(1). If the sentence imposed exceeded 13 months, then the offense level is increased by 16 points. U.S.S.G. § 2L1.2(b)(1)(A)(i). If the sentence imposed was 13 months or less, then the offense level is increased by 12 points. U.S.S.G. § 2L1.2(b)(1)(B). As with the calculation of a defendant's criminal history score, the calculation of his offense level must not take into account portions of a sentence that have been suspended. U.S.S.G. § 2L1.2, cmt. n. 1(A)(iv) ("If all or part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed.").

The outcome of this appeal turns on whether or not a portion of Garcia's 31–month sentence for his 1995 drug traffick-

ing offense was "suspended" for the purpose of applying U.S.S.G. §§ 2L1.2 and 4A1.2.[2] Garcia argues that when the state court recommended that he serve his sentence in a work ethic camp, where he earned three days of credit for each day he actually served, the court suspended the remaining two thirds of his sentence. If Garcia is correct, then he should have received only two criminal history points for that offense because the relevant "sentence of imprisonment" was at least 60 days but not more than 13 months, *see* U.S.S.G. § 4A1.1(b), and his offense level should have been increased by only 12 points because the "sentence imposed" was 13 months or less, *see* U.S.S.G. § 2L1.2(b)(1)(B). The government argues that the amended sentence did not operate to suspend the unserved portion of his prison term, so his criminal history and offense level should be calculated based on the original length of the sentence imposed, or 31 months. If the government is correct, then the court did not err in adding three points to Garcia's criminal history score because the relevant "sentence of imprisonment" was greater than one year and one month, *see* U.S.S.G. § 4A1.1(a), and it properly increased his offense level by 16 points because the "sentence imposed" exceeded 13 months. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i).

To support his contention that his sentence was suspended, Garcia relies on two state court cases, *State v. Bird*, 95 Wash.2d 83, 622 P.2d 1262 (1980), and *Washington v. Carlyle*, 19 Wash.App. 450, 576 P.2d 408 (1978), both of which describe the concept of the suspended sentence under Washington law. He points out that in

Washington, the imposition of a suspended sentence is conditioned on the defendant's agreement to certain terms. *See id.* at 411 ("When a sentence has been 'suspended,' the court has adjudged the accused guilty of the crime and has passed sentence upon him but has arrested the execution or operation of the sentence upon specified conditions."). Garcia contends that because his early release pursuant to the work ethic camp program was also conditional, it meets Washington's definition of a "suspended" sentence.

■■■ We disagree with Garcia's unstated premise, which is that *all* conditional releases in the State of Washington necessarily involve "suspended" sentences. But even if Garcia were correct, and the unserved portion of his sentence constituted a "suspended sentence" under Washington law, we do not defer to Washington's characterization of its sentence when determining the effect of that sentence under the United States Sentencing Guidelines. *See United States v. Davis*, 922 F.2d 1385, 1390 (9th Cir.1991) (holding that "the laws of the state of Washington do not govern a federal court's interpretation of the United States Sentencing Guidelines"), *overruled on other grounds, Buford v. United States*, 532 U.S. 59, 63, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001). When determining the effect of a prior state court sentence, we must look to federal law. *United States v. Mendoza–Morales*, 347 F.3d 772, 776 (9th Cir.2003) ("[H]ow a state characterizes its own offenses and sentences generally is not relevant to a federal sentence calculation."); *United States v. Hernandez–Valdovinos*, 352 F.3d 1243, 1248 (9th Cir.2003).

**2.** Because both guideline sections provide that portions of a sentence that have been suspended are not counted for the purpose of calculating the length of a prior sentence, cases addressing the question of whether a prior sentence was suspended for the purpose of applying § 4A1.2 are equally relevant to

the question of whether a prior sentence was suspended for the purpose of applying § 2L1.2. *Cf. United States v. Hernandez–Valdovinos*, 352 F.3d 1243, 1249 (9th Cir.2003) (adopting § 4A1.2's definition of the term "sentence of imprisonment" to interpret the term "sentence imposed" in § 2L1.2).

The defining characteristic ·of a "suspended sentence" under the United States Sentencing Guidelines is that it is suspended by a judicial officer, rather than an executive agency. In *United States v. Harris,* 237 F.3d 585 (6th· Cir. 2001), the defendant had been sentenced to three years imprisonment on a drug conviction, but was paroled after only 18 days because of overcrowding in the prison to which he was committed. The court held that even though the defendant had not served the entire three-year term, his criminal history score should be calculated based on the entire length of the sentence imposed because the Guidelines' use of the word "suspended" referred only to judicial suspensions of a sentence, not administrative decisions to parole an inmate. *Id.* at 589. In reaching that result, the court relied on U.S.S.G. Ch. 7 Pt. A, which described the power formerly vested in federal courts (prior to the implementation of the federal sentencing guidelines) to suspend the imposition of a sentence of imprisonment and place a defendant on probation. *Id.* Because Chapter 7 referred to a *court's* authority to suspend sentences, the court reasoned, the term "suspended" referred only to judicial suspensions. *Id.* And because the term was defined that way in chapter 7, the court reasoned, it had the same meaning in other chapters. *Id.*[3]

The Seventh Circuit confronted the same question we face in this case in *United States v. Gajdik,* 292 F.3d 555 (7th Cir.2002). There, the defendant had been convicted of burglary in Illinois state court and sentenced to five years imprisonment. The state court judge recommended to the Illinois Department of Corrections that the defendant be permitted to serve his time in a "boot camp" in lieu of incarceration. The defendant completed the program and was released in only 121 days. When he was later convicted and sentenced for fraud in federal court, the district court took into account the length of the sentence imposed, rather than the actual time of incarceration, and assessed three criminal history points for the conviction pursuant to U.S.S.G. § 4A1.2. *Id.* at 557. The defendant argued that the district court erred in taking into account the original sentence because the court's recommendation that he serve his time in the "boot camp" constituted a suspension of the remainder of his sentence. The Seventh Circuit disagreed, reasoning that "only a court, not an executive agency, could suspend a sentence." *Id.* at 558. Because the boot camp program was administered by the Department of Corrections, which determined which inmates to admit into the program and which inmates were to be released early, the court held that "Gadjik's successful participation in the[boot camp] program did not operate to 'suspend' the remainder of his five year sentence for burglary. Rather, the procedure more closely resembles a pardon or commutation by the executive." *Id.*

In this case, as in *Gajdik* and *Harris,* a correctional administrator, not a judge, made the decision to release Garcia prior to the completion of the term of his sentence. Although the judge had the authority to recommend that Garcia be placed in the program, the Department of Corrections had sole discretion to determine both whether to admit him to the program, WASH. REV. CODE § 9.94A.137(3) (1995), and whether he successfully completed the program so as to be entitled to

---

3. The Sentencing Guidelines provide that definitions of terms in individual chapters of the Guidelines "are not designed for general applicability." U.S.S.G. § 1B1.1, cmt. n. 2. Courts can, however, consider whether definitions from one section can be applied to other sections "on a case by case basis." *Id.*

early release. WASH. REV. CODE § 9.94A.137(4) (1995) ("An offender who fails to complete the work ethic camp program, who is *administratively terminated* from the program, or who otherwise violates any conditions of supervision, *as defined by the department,* shall be reclassified to serve the unexpired term of his or her sentence as ordered by the sentencing judge and shall be subject to all rules relating to earned early release time.") (emphasis added).

Garcia concedes that the decision whether to grant him an early release was made by the Department of Corrections, but contends that the judge's recommendation that he serve his time in a work camp was tantamount to a suspended sentence because "the court is the entity which allowed [him] into the program in the first place with full knowledge of the law." That argument fails, however, meaningfully to distinguish Garcia's circumstances from those of any defendant who is eligible for parole or other early-release programs. Judges are presumably aware that the defendants they sentence may be eligible for such early-release programs, yet we have declined to take into account the reduced sentences served by those inmates unless the actual decision to release the inmate early was made by the sentencing judge. *See United States v. Benitez–Perez,* 367 F.3d 1200, 1204 (9th Cir.2004) (holding that parole did not operate to "suspend" an offender's sentence for the purpose of calculating his offense level because it did not affect the "actual sentence imposed by the judge"); *United States v. Schomburg,* 929 F.2d 505, 507 (9th Cir.1991) (taking into account length of sentence imposed by trial court when calculating criminal histo-

ry score, notwithstanding defendant's shortened term in a weekend work release program, because the offender's "eligibility for the weekend work project was ultimately determined by the Deputy Sheriff, who could have imprisoned [him] or not at his discretion"); *see also United States v. Holbert,* 285 F.3d 1257, 1263 (10th Cir. 2002) (taking into account an entire 90–day sentence when calculating defendant's criminal history score despite the fact that defendant was credited for two days of jail time for each day actually served). Because the decision to release Garcia early was not made by the sentencing judge, the unserved portion of his sentence was not "suspended."

Our holding is also consistent with the Fifth Circuit's decision in *United States v. Brooks,* 166 F.3d 723 (5th Cir.1999). In that case, the defendant had previously been sentenced in a Texas court to ten years' imprisonment, but the state court judge recommended that he be placed in a "boot camp" program where he served only a fraction of his term. *Id.* at 726. When calculating his criminal history score for the purpose of imposing sentence in a subsequent federal case, the district court took into account only the time the defendant served, rather than the length of the original sentence imposed. In affirming the district court, the Fifth Circuit noted that the Texas statute that established the criteria for the "boot camp" program provided that when the offender successfully completes the program, "the *judge* of the court that imposed the sentence may suspend further execution of the sentence imposed." *Id.* at 726 n. 2 (quoting TEX. CODE. CRIM. PROC. ANN. art. 42.12 § 8 (West Supp. 1997)) (emphasis added).[4] By contrast, the

---

4. Moreover, there was no live dispute about whether or not the unserved portion of the sentence was "suspended" for the purpose of applying the guidelines in *Brooks* because the government never argued that the court should take into account the entire length of sentence when calculating the defendant's criminal history, but only the time he actually served. *Brooks,* 166 F.3d at 726 n. 2.

Washington statute under which Garcia was sentenced gave the *Department of Corrections* discretion to determine whether or not an inmate should be released early. *See Gajdik,* 292 F.3d at 560 (distinguishing early release program in which the judge made the decision to release an inmate because of his "assessment that his previous crime was not so serious as to require a two-year term in the penitentiary").

Because the unserved portion of Garcia's 31-month sentence was not "suspended," the district court did not err in increasing Garcia's offense level by 16 points pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), nor in adding three points to his criminal history category pursuant to U.S.S.G. § 4A1.1(a).

### B. The Court's Refusal to Grant a Downward Departure on the Ground that Garcia's Criminal History was Overstated

Garcia urged the sentencing court to grant him a downward departure on the ground that his criminal history was overstated. *See* U.S.S.G. § 5K2.0; *United States v. Cuevas–Gomez,* 61 F.3d 749, 750 (9th Cir.1995). He argued that the addition of an extra point to his criminal history score for his 1996 conviction for "Third Degree Driving While License Suspended" and "Refusal to Give Information / Cooperate" had the disproportionate result of elevating his criminal history category from III to IV, and pointed out that his criminal history score was particularly inappropriate because he had never before been imprisoned.

■ We lack jurisdiction to review the district court's decision not to grant a discretionary downward departure, so long as the judge recognized that he or she had discretion to depart and exercised that discretion. *United States v. Webster,* 108 F.3d 1156, 1158 (9th Cir.1997). Here, the judge clearly exercised his discretion in denying the motion for a downward departure. When sentencing Garcia–Gomez, he stated that "driving while license suspended is something that is a criminal history point that [he] would look hard at to see if it was particularly onerous. If it had an impact." Nonetheless, he did "not find that the criminal history overstates the actual criminal conduct of the defendant." Because the sentencing judge was clearly aware that he had discretion to depart and elected not to do so, his decision is not reviewable.

We therefore dismiss this portion of the appeal.

### IV

For the foregoing reasons, the appeal is **DISMISSED** in part; otherwise, the judgment of the district court and the sentence are **AFFIRMED**.