**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SAUL CHAVEZ-DIAZ,

    Defendant-Appellant.

No. 05-2288

---

**Appeal From The United States District Court**
**For The District of New Mexico**
**(D.C. No. CR-05-960 BB)**

---

Submitted on the briefs:[*]

Kari Converse, Albuquerque, New Mexico, for Defendant-Appellant.

David C. Iglesias, United States Attorney, and Norman Cairns, Assistant United States Attorney, District of New Mexico, for Plaintiff-Appellee.

---

Before **HENRY, BRISCOE,** and **O'BRIEN**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, ordered submitted without oral argument.

Saul Chavez-Diaz pleaded guilty to illegal reentry after deportation subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was sentenced to thirty months of imprisonment. Chavez-Diaz appeals his sentence, contending that the district court miscalculated his guideline range and that his sentence is unreasonable because mitigating circumstances warranted a lower sentence. We conclude that while we do not have jurisdiction to review the district court's discretionary decision to deny a downward departure, we have jurisdiction post-Booker to review the sentence imposed for reasonableness. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Chavez-Diaz's sentence.

## I.

On March 17, 2005, United States Border Patrol agents arrested Saul Chavez-Diaz and seven other individuals who were suspected of illegally crossing the United States-Mexico border near Columbus, New Mexico. A criminal records check revealed that Chavez-Diaz had been previously deported following a 1995 conviction in Wyoming state court.

Chavez-Diaz pleaded guilty, without the benefit of a plea agreement, to one count of illegal reentry after deportation for an aggravated felony. The presentence report (PSR) recommended a total offense level of 21 and a criminal history category score of II, resulting in an advisory guideline range of 41 to 51 months. Specifically, the PSR

calculated a base offense level of 8, U.S.S.G. § 2L1.2(a), added 16 levels because

Chavez-Diaz's prior 1995 conviction constituted a drug trafficking offense for which the

sentence imposed exceeded thirteen months, U.S.S.G. § 2L1.2(b)(1)(A)(i), and subtracted

3 levels for Chavez-Diaz's acceptance of responsibility, U.S.S.G. § 3E1.1.  Further,

Chavez-Diaz received three criminal history points based on his 1995 conviction.  The

PSR found nothing upon which to base a departure.[1]

At sentencing, the district court stated that it had reviewed the PSR, and that based

on an offense level of 21 and a criminal history category I, Chavez-Diaz's sentencing

range was 41 to 51 months.  Vol. III at 22.[2]  The district court, however, expressed

concern over Chavez-Diaz's decision to decline a Rule 11(c)(1)(C) plea agreement, which

would have resulted in an offense level of 19.  Id. at 2, 19.  The district court explained

that it could not see a substantive difference between Chavez-Diaz's case and the district

court's two previous sentencings that day, other than Chavez-Diaz's decision not to

accept the 11(c)(1)(C) plea agreement.  Id. at 21.  The district court stated that to avoid

unwarranted sentencing disparity, it needed to consider other sentences given to similarly

---

[1]     Prior to sentencing, counsel for Chavez-Diaz filed a lengthy "Sentencing Memorandum" which enumerated circumstances which she argued would justify a downward departure from the advisory guideline range.  Although a motion for downward departure was not filed per se, the sentencing memorandum sought a downward departure and cited 18 U.S.C. § 3553, U.S.S.G. § Ch. 1 Pt.A.4(b), 4A1.3, and 5K2.0, as well as downward departure cases.

[2]     It appears that the district court misstated Chavez-Diaz's criminal history score as calculated in the PSR.

situated defendants in the District of New Mexico. Id. at 22, 25. As a result, the district

court sentenced Chavez-Diaz to thirty months of imprisonment. Id. at 22. The district

court applied an offense level of 19 and a criminal history category I, consistent with one

of the two previously sentenced defendants. Id.[3] By sentencing Chavez-Diaz to thirty

months, the district court sentenced below the guideline range of 41-51 months calculated

in the PSR.

II.

A. Sentence Enhancement Under U.S.S.G. § 2L1.2

Chavez-Diaz argues that the district court miscalculated his offense level.

Specifically, Chavez-Diaz asserts that his 1995 Wyoming conviction did not qualify him

for the 16-level enhancement under U.S.S.G. § 2L1.2. By Chavez-Diaz's computation,

the district court should have applied an ultimate adjusted offense level of 15.[4]

"Even after Booker, 'when reviewing a district court's application of the

Sentencing Guidelines, we review legal questions de novo and we review any factual

findings for clear error, giving due deference to the district court's application of the

guidelines to the facts.'" United States v. Wolfe, 435 F.3d 1289, 1295 (10th Cir. 2006)

---

[3]     An offense level 19, with a criminal history category I, set a guidelines imprisonment range of 30 to 37 months. The government did not challenge the district court's use of this lower offense level and criminal history category, and has not appealed from any aspect of the sentence imposed.

[4]     To reach an offense level of 15, Chavez-Diaz starts with a base offense level of 8, adds a 12-level enhancement under § 2.L1.2(b)(1)(B), and subtracts 3 levels for acceptance of responsibility and 2 levels for a fast-track reduction. Aplt. Br. at 13.

(citations omitted).

Section U.S.S.G. § 2L1.2(a) recommends a base offense level of 8 for defendants unlawfully entering or remaining in the United States. The section recommends an increase of 16 levels for defendants previously deported after a felony drug trafficking conviction "for which the sentence imposed exceeded 13 months," U.S.S.G. § 2L1.2(b)(1)(A)(i), but only an increase of 12 levels for defendants previously deported after a felony drug trafficking conviction "for which the sentence imposed was 13 months or less," id. § 2L1.2(b)(1)(B).

Chavez-Diaz contends that the effect of his 1995 Wyoming sentence was a suspended sentence of less than thirteen months. He argues that the Wyoming state court imposed an alternative sentence: four to six years of imprisonment, or a suspended sentence if immigration officials deported him. Chavez-Diaz asserts that since he was deported soon after his sentencing, his sentence was effectively a suspended sentence. Thus, Chavez-Diaz argues that the district court should have used this alternative, suspended sentence, which was less than thirteen months of imprisonment, and increased his offense level by 12, not 16. The government responds that nothing in the state court record indicates that Chavez-Diaz received a suspended sentence. The government suggests that the "alternative" sentence imposed by the state court was an option available to INS, i.e., contingent on administrative action. Thus, the government asserts that deportation in Chavez-Diaz's case did not function as a suspended sentence.

As regards the 1995 Wyoming conviction, the record indicates that Chavez-Diaz pleaded guilty to two counts of delivery of a non-narcotic controlled substance. Supp. Vol. I, Exh. C, at 20. At the sentencing hearing, the state court inquired about the terms of Chavez-Diaz's plea agreement. Id. at 18. The state prosecutor responded that in exchange for Chavez-Diaz's guilty plea to two counts, the state would agree to dismiss the remaining four counts and recommend a sentence of four to six years on each count, to run concurrently, "with the same conditions as [Chavez-Diaz's] co-defendant as far as the understanding with the INS." Id. at 19. Earlier in the proceeding, Chavez-Diaz's co-defendant asked whether the court had been notified that INS would pick him up in 30 to 60 days. Id. at 11. The court informed Chavez-Diaz's co-defendant that it had been notified of the INS's procedures, but informed Chavez-Diaz's co-defendant that "there is no guarantee that INS will do that." Id. at 11. Similarly, the state court stressed to Chavez-Diaz that the court could not control whether the INS deported him or not. Id. at 20. The state court then sentenced Chavez-Diaz to a minimum of four years and a maximum of six years on each count, to run concurrently. Id. at 26. The state court's judgment stated:

> IT IS FURTHER ORDERED that upon each count, the Defendant is placed in the care, custody and control of the Department of Corrections for physical placement at a State Penal Institution for a period of not less than four (4) years nor more than six (6) years. The Defendant's prison terms shall run concurrently with each other. The Defendant is given credit upon both the minimum and maximum sentences imposed herein, for forty-three (43) days already served in connection with this matter as of June 1, 1995.

IT IS FURTHER ORDERED that the Defendant is remanded to the custody of the Platte County Sheriff, for incarceration in the Platte County Jail until he is transported to the Wyoming State Penal Institution.

IT IS FURTHER ORDERED that if deemed appropriate by the Department of Immigration and Naturalization Services, the Defendant shall be immediately deported and returned to Mexico.

Vol. IV, Doc. 16, at Ex. A. Chavez-Diaz was deported to Mexico twenty-six days after the state court sentenced him. Aplt. Br. at 4 n.2.

We agree with the government that the district court correctly determined that Chavez-Diaz's 1995 Wyoming sentence exceeded thirteen months for purposes of § 2L1.2. To interpret the term "sentence imposed" in § 2L1.2, the guideline sections adopt the meaning of the term "sentence of imprisonment" found in subsection (b) and Application Note 2 of § 4A1.2. U.S.S.G. § 2L1.2, application note 1(B)(vii). Section 4A1.2(b) provides:

> (1) The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.
>
> (2) If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

U.S.S.G. § 4A1.2(b).[5] The Wyoming state court clearly imposed a maximum term of imprisonment of six years. The issue is whether part of that six-year term of imprisonment was suspended.

---

[5] Application Note 2 provides examples to demonstrate that "the length of a sentence of imprisonment is the stated maximum." U.S.S.G. § 4A1.2, application note 2.

When determining the effect of a prior state court sentence for purposes of applying the United States Sentencing Guidelines, we must look to federal law. United States v. Garcia-Gomez, 380 F.3d 1167, 1171 (9th Cir. 2004) (citations omitted). The guidelines do not provide an express definition of "suspended sentence." United States v. Gajdik, 292 F.3d 555, 558 (7th Cir. 2002). But "[t]he defining characteristic of a 'suspended sentence' under the United States Sentencing Guidelines is that it is suspended by a judicial officer, rather than an executive agency." Garcia-Gomez, 380 F.3d at 1172; see also Gajdik, 292 F.3d at 558 (observing that "under the now-repealed federal statute authorizing suspension of a sentence, 18 U.S.C. § 3651, only a court, not an executive agency could suspend a sentence") (citing United States v. Harris, 237 F.3d 585, 589 (6th Cir. 2001)). Chavez-Diaz cites no authority for the proposition that his deportation, as a matter of law, had the result of transforming his four to six year sentence into a suspended sentence. As the government correctly points out, neither the transcript of the state court sentencing hearing, nor the state court's written judgment, demonstrates that the state court intended to impose a suspended sentence. Rather, the state court imposed a four to six year sentence and informed Chavez-Diaz, as well as his co-defendant, that the decision to deport was left entirely to the INS's discretion. Under these circumstances, we conclude that the government has met its burden to prove the facts supporting Chavez-Diaz's sentence enhancement. See United States v. Martinez-

Villalva, 232 F.3d 1329, 1333 (10th Cir. 2000) (applying a preponderance of the evidence standard) (citation omitted).

### B. Reasonableness of Sentence

Chavez-Diaz asserts that his sentence is unreasonable because the district court failed to consider the mitigating circumstances he presented. First, Chavez-Diaz asserts that, during his pre-sentence incarceration, he received inadequate medical attention for severe pain in his groin and an ear infection. He suggests that his untreated medical conditions rendered his pre-sentence confinement extraordinary and should result in his receiving a lesser sentence. Second, Chavez-Diaz contends that he made a reasonable mistake regarding the legality of his reentry into the United States. Chavez-Diaz acknowledges that in 1995 an immigration official informed him that he was being deported for five years. But Chavez-Diaz argues that the immigration official failed to advise him that he would be denied readmission after the five-year period because of his drug conviction. Chavez-Diaz states that government agents led him to believe that it would not be a criminal act for him to return to the United States after five years, and thus, imperfect entrapment should have been considered by the district court in fashioning an appropriate sentence.

As an initial matter, we address our jurisdiction to review Chavez-Diaz's arguments. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (holding that "every federal appellate court has a special obligation to satisfy itself . . . of

-9-

its own jurisdiction") (quotation omitted). Chavez-Diaz frames his appeal as a challenge to the reasonableness of his sentence, contending that the district court's sentence did not comport with 18 U.S.C. § 3553(a)(2). In essence, however, Chavez-Diaz challenges the district court's refusal to further depart downward from the advisory guideline range. Indeed, Chavez-Diaz relies on downward departure cases in his brief to support his arguments. Prior to Booker, we had held that we lacked jurisdiction "to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant a departure." United States v. Sierra-Castillo, 405 F.3d 932, 936 (10th Cir. 2005) (citing United States v. Castillo, 140 F.3d 874, 887-88 (10th Cir. 1998)). We made an exception only if the district court "refused to depart because it interpreted the Guidelines to deprive it of the authority to do so." United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999). In our post-Booker decisions, we have reaffirmed these principles in reviewing sentences imposed pre-Booker. See e.g., United States v. Sims, 428 F.3d 945, 963 (10th Cir. 2005); Sierra-Castillo, 405 F.3d at 936; United States v. Hamilton, 413 F.3d 1138, 1146 (10th Cir. 2005). We specifically noted in Sierra-Castillo that Booker "left intact the section providing for appellate review of sentences, 18 U.S.C. § 3742(a)." 405 F.3d at 936 n.3 (citation omitted). As a result, we stated that this court "continues to have the same jurisdiction to review Guidelines sentences as it had before . . . Booker." Id. (citations

omitted).[6]

While it is true that the "jurisdictional" language contained in § 3742(a) remains the same, its meaning is effectively broadened for sentences imposed after Booker. Section 3742(a)(1) permits the defendant to appeal an otherwise final sentence if the sentence "was imposed in violation of law."[7] For sentences imposed after Booker our review is for "reasonableness," United States v. Morales-Chaires, 430 F.3d 1124, 1128 (10th Cir. 2005) (citing United States v. Booker, 125 S. Ct. 738, 766 (2005)), and this review under § 3742(a)(1) can now encompass arguments which previously were barred

---

[6]    In United States v. Hahn, 359 F.3d 1315, 1320-22 (10th Cir. 2004) (en banc), this court discussed whether 18 U.S.C. § 3742(a) is a jurisdictional statute. The per curiam majority noted we frequently cite both 28 U.S.C. § 1291 and 18 U.S.C. § 3742 as providing jurisdiction for our review of direct criminal appeals. We concluded that the passage of 18 U.S.C. § 3742(a) did not implicitly repeal 28 U.S.C. § 1291. Id. at 1322.

[7]    Pursuant to 18 U.S.C. § 3742(a), a defendant may appeal his sentence if that sentence:

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or
(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a).

as an attempt to appeal a denial of a downward departure.  See United States v. Cooper, 437 F.3d 324, 328 (3d Cir. 2006) (holding that the court has jurisdiction to review sentences for reasonableness under § 3742(a)(1)); United States v. Martinez, 434 F.3d 1318, 1322 (11th Cir. 2006) (concluding "that a post-Booker appeal based on the 'unreasonableness' of a sentence, whether within or outside the advisory guideline range, is an appeal asserting that the sentence was imposed in violation of law pursuant to § 3742(a)(1)") (citation omitted).  As the Seventh Circuit recently remarked:  "Post-Booker, because we must review all sentences for reasonableness in light of the factors specified in § 3553(a), we necessarily must scrutinize, as part of that review, the district court's refusal to depart from the advisory sentencing range."  United States v. Vaughn, 433 F.3d 917, 923-24 (7th Cir. 2006) (internal citations and quotations omitted); see also Cooper, 437 F.3d at 329-33 (reviewing sentence for reasonableness under the § 3553 factors, but declining review of the discretionary decision to deny departure); United States v. Winingear, 422 F.3d 1241, 1245-46 (11th Cir. 2005) (declining to review a denial of credit under U.S.S.G. § 5K2.23, but reviewing the final sentence for reasonableness); United States v. Frokjer, 415 F.3d 865, 875 & n.3 (8th Cir. 2005) (concluding that post-Booker a district court's discretionary decision not to depart downward is not subject to review, but recognizing that it would review a defendant's argument that the district court's sentence was unreasonable in light of the sentencing factors set forth in 18 U.S.C. § 3553(a)).  Accordingly, we hold that while we do not have jurisdiction to review the

district court's discretionary decision to deny a downward departure, we have jurisdiction post-<u>Booker</u> to review the sentence imposed for reasonableness.  <u>See also</u> <u>Winingear</u>, 422 F.3d at 1245 (stating that a court of appeals reviews a defendant's final sentence for reasonableness, as opposed  "to each individual decision during the sentencing process").

This holding is not contrary to <u>Sierra-Castillo</u>, which held that post-<u>Booker</u> we lack jurisdiction to review a district court's discretionary decision to deny a motion for a downward departure.  405 F.3d at 936.  In <u>United States v. Kristl</u>, 437 F.3d 1050, 1054-55 (10th Cir. 2006), we upheld the vitality of <u>Sierra-Castillo</u> when we announced a two-step approach for review of sentences post-<u>Booker</u>.  First, we review, if challenged, whether the district court correctly calculated the defendant's guideline sentence, reviewing the district court's legal conclusions de novo and factual findings for clear error.  <u>Id.</u>  Second, if the district court correctly determined the guideline sentence, then we review the sentence for reasonableness, applying a rebuttable presumption of reasonableness for sentences imposed within the advisory guideline range.  <u>Id.</u>  We view a direct challenge to a district court's discretionary decision not to depart downward as a challenge to the district court's preliminary application of the guidelines (the first step under <u>Kristl</u>), and this challenge under <u>Sierra-Castillo</u> remains unreviewable.  <u>See</u> <u>Winingear</u>, 422 F.3d at 1245.  In the present case, Chavez-Diaz has challenged the reasonableness of his sentence (the second step under <u>Kristl</u>), which as stated above, necessarily requires that we take into account the defendant's asserted grounds for

departure when reviewing the sentence for reasonableness.

As regards Chavez-Diaz's assertion that his thirty-month sentence was unreasonable, we easily conclude that Chavez-Diaz's sentence, which fell below the advisory guideline range, was reasonable. At sentencing, the district court acknowledged that there existed some problems with Chavez-Diaz's medical care, but noted that Chavez-Diaz received an ultrasound, treatment from a urologist, and medical attention four times in June 2005 alone. Vol. III at 7, 9. The district court stated that although Chavez-Diaz's medical care was a factor the court "should be mindful of," Chavez-Diaz's medical issues did not rise to the level of justifying a downward departure. Id. at 7, 22. The district court concluded that it would instead "drop" Chavez-Diaz's sentence "to make it consistent with" one of the defendants it sentenced earlier that day. Id. at 22. The record indicates that the district court carefully considered the sentencing factors under 18 U.S.C. § 3553(a), and recognized, to Chavez-Diaz's benefit, a potential sentencing disparity under 18 U.S.C. § 3553(a)(6). The district court's decision not to impose an even lower sentence because of alleged inadequate medical care did not render Chavez-Diaz's sentence unreasonable. Further, Chavez-Diaz's assertion that the district court should have departed based on bad immigration advice, or the availability of an imperfect entrapment defense, is disingenuous. The district court correctly characterized Chavez-Diaz's contentions as an ignorance of the law defense. Vol. III at 10-11. Even assuming circumstances may arise where a defendant's ignorance of the law may

-14-

constitute a mitigating sentencing factor, Chavez-Diaz's belief that no penalty would attach to his reentry is belied by the fact that he crossed the border at a point other than a port of entry.

In sum, the district court correctly calculated Chavez-Diaz's advisory guideline range, and, relying on 18 U.S.C. § 3553(a)(6), departed downward so that Chavez-Diaz's sentence would conform with other similarly situated defendants in the District of New Mexico. The district court's refusal to depart further based on other "mitigating" factors did not result in an unreasonable sentence. Accordingly, Chavez-Diaz's sentence is AFFIRMED.