**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MODESTO IVAN FONSECA,

Defendant-Appellant.

No. 05-1407

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 04-CR-470-WYD)**

Richard Byron Peddie, Richard Byron Peddie, P.C., Longmont, Colorado, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney (William J. Leone, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

Before **MURPHY, ANDERSON,** and **O'BRIEN,** Circuit Judges.

**MURPHY**, Circuit Judge.

**I. Introduction**

Modesto Ivan Fonseca pleaded guilty to one count of possession with intent to distribute a mixture containing methamphetamine. Based on the quantity of

actual methamphetamine involved, the Presentence Investigation Report (PSR) recommended a total offense level of twenty-nine, pursuant to the United States Sentencing Guidelines (USSG). Fonseca argued the district court should grant a downward departure because, as a middleman, he could not have reasonably foreseen the high purity of the drugs. The district court rejected his request and sentenced Fonseca to 108 months' imprisonment, a sentence at the low end of the applicable Guideline range. Fonseca appeals his sentence, arguing the district court erroneously failed to recognize its discretion to grant the downward departure. Because the district court did not unambiguously state it lacked discretion to grant the requested downward departure, this court lacks jurisdiction and **dismisses** the appeal.

## II. Background

Fonseca was arrested for his role in a drug transaction between an acquaintance and a third party, which was part of an undercover operation undertaken by the Mesa County Drug Task Force. As part of the ongoing investigation, an undercover officer reached an agreement with Fonseca's co-defendant, Devon Powell, to purchase three ounces of methamphetamine. Fonseca drove Powell to the parking lot where the transaction was to take place, and Powell exchanged the three ounces of methamphetamine for the agreed-upon amount in cash. Following the transaction, Powell returned to Fonseca's vehicle and both were arrested as they attempted to leave the parking lot. In addition to

the three ounces sold to the undercover officer, police found another two ounces of methamphetamine in a fast food container in Fonseca's car. Subsequent testing of the drugs concluded the substance sold to the undercover officer totaled 83.2 grams of methamphetamine mixture with a purity level of 89%. The additional two ounces found in the car amounted to 55.5 grams with a purity level of 87%. Based on these amounts, the total amount of pure methamphetamine involved was 122.2 grams.[1]

Fonseca was indicted on one count of possession with intent to distribute more than fifty but less than two hundred grams of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii). He pleaded guilty to the charge pursuant to a plea agreement in which the government agreed to recommend a sentence at the bottom of the applicable Guideline range. The PSR concluded Fonseca's base offense level was thirty-two, based on a quantity of 122.2 grams of actual methamphetamine involved in the offense. USSG § 2D1.1(c)(4). The PSR then recommended a three-level adjustment for acceptance of responsibility. The resulting total offense level of

---

[1] The stipulation of facts in the plea agreement erroneously calculates the total amount of actual methamphetamine attributed to the additional two ounces of methamphetamine mixture as 54.2 grams. A proper calculation would produce a total of 48.285 grams, 87% of 55.5 grams. This error was corrected in the Presentence Investigation Report, which properly calculated the total amount of actual methamphetamine involved in both transactions as 122.2 grams. The miscalculation, however, is immaterial because both calculations produce the same base offense level under USSG § 2D1.1.

twenty-nine, coupled with a criminal history category of III, produced a Guideline range of 108 to 135 months.

Prior to sentencing, Fonseca filed a sentencing memorandum in which he asked the court to sentence him based upon the offense level for the quantity of methamphetamine mixture involved rather than the quantity of actual methamphetamine.[2] Because the total methamphetamine mixture amounted to 138.7 grams, such a calculation would reduce his base offense level from thirty-two to twenty-six. *See* USSG § 2D1.1(c)(7). Fonseca argued the high purity level of the drugs was not reasonably foreseeable to him because he was merely a middleman in the transaction. He cited *United States v. Mendoza*, 121 F.3d 510, 513 (9th Cir. 1997), for the proposition that a district court has authority to depart downward based on a defendant's lack of control or knowledge of the purity of the drugs.

At the sentencing hearing, Fonseca again requested "an adjusted advisory Guideline level" of twenty-six, based on the lack of foreseeability of the drug purity. He asserted his role in the transaction was merely to obtain the drugs for Powell from a third party and then to return the sale money to the original source of the drugs. Given this limited role in the transaction, Fonseca claimed he could not have foreseen the drugs he was delivering were more than eighty-five percent

---

[2] Fonseca also argued he should receive a two-level downward adjustment because he was only a minor participant in the offense. *See* USSG §§ 3B1.2(b), 2D1.1(a)(3). At sentencing, however, he conceded this adjustment did not apply.

pure. In response, the government argued a departure was not warranted because the high price of the drugs made their high purity reasonably foreseeable to Fonseca. The district court ultimately declined to grant a downward departure and adopted the conclusions set forth in the PSR. It then sentenced Fonseca to 108 months' imprisonment, a sentence at the bottom of the Guideline range.

## III. Analysis

On appeal, Fonseca argues the district court erroneously failed to recognize it had discretion to grant a downward departure based on a defendant's lack of knowledge of drug purity levels. He further contends the error was not harmless because the district court may have granted the departure if it had known it had the legal authority to do so. Because this court rejects Fonseca's necessary premise that the court believed it did not have discretion to grant the departure on the asserted grounds, it need not be decided whether such a conclusion would have been error.

This court reviews sentences imposed after *Booker* according to the two-step approach set forth in *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). First, this court determines whether the district court properly applied the Sentencing Guidelines, reviewing its legal conclusions *de novo* and its factual findings for clear error. *Kristl*, 437 F.3d at 1055. In calculating the proper Guideline range, the district court is still required to consider and apply the departure provisions in appropriate cases. *United States v. Sierra-Castillo*, 405

F.3d 932, 936 n.2 (10th Cir. 2005). A direct challenge to the district court's denial of a downward departure is therefore treated as a challenge to the preliminary application of the Guidelines under the first step of the *Kristl* analysis. *United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006). If the Guidelines are properly applied, this court then reviews the ultimate sentence imposed for reasonableness, applying a rebuttable presumption of reasonableness for sentences within the properly calculated Guidelines range. *Id.*

Even after *Booker*, "[t]his court has no jurisdiction . . . to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." *Sierra-Castillo*, 405 F.3d at 936. This court may review a denial of a downward departure only if the denial is based on the sentencing court's interpretation of the Guidelines as depriving it of the legal authority to grant the departure. *United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir. 1999). In making this determination, the district court is presumed to recognize its discretion, unless it unambiguously states it lacks discretion to grant the departure. *Sierra-Castillo*, 405 F.3d at 936. Ambiguous statements are treated "as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart." *Id.* (quotation omitted). While this court now has jurisdiction to review a defendant's final sentence for reasonableness, it

nevertheless continues to lack jurisdiction to review the discretionary denial of a downward departure. *Chavez-Diaz*, 444 F.3d at 1229.

Fonseca's argument on appeal is a narrow one. He challenges his sentence only with respect to the district court's denial of a downward departure based on his lack of knowledge of the drug purity levels. He presents no other challenges to the calculation of the appropriate Guidelines range, and he does not argue the ultimate sentence imposed was unreasonable.[3] Where the defendant declines to challenge reasonableness and instead challenges only the denial of a downward departure in applying the Guidelines, as Fonseca does here, the pre-*Booker* rules still apply. *See Sierra-Castillo*, 405 F.3d at 936. Thus, this court has jurisdiction over Fonseca's appeal only if the sentencing court unambiguously stated it did not have discretion to grant the downward departure on the grounds urged by Fonseca at sentencing. *See id.*

---

[3] This court notes it would have jurisdiction to review Fonseca's challenge if his argument had instead been framed in terms of a challenge to the reasonableness of his sentence. *See United States v. Chavez-Diaz*, 444 F.3d 1223, 1228-29 (10th Cir. 2006) (noting jurisdiction to review district court's refusal to depart downward as part of a challenge to the reasonableness of the sentence). While this may initially appear to be a formalistic distinction, Fonseca's reply brief suggests he intentionally narrowed his claim in this manner to avoid the presumption of reasonableness set forth in *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). *See* Aplt. Reply Br. at 1-2 (characterizing the government's brief as "designed to shunt Mr. Fonseca's case into reasonableness testing under *Kristl*, where Fonseca must face virtually insurmountable presumptions and jurisdictional hurdles on his way to relief").

In this case, statements made by the district court at sentencing indicate it rejected Fonseca's argument for a downward departure not because it believed it had no authority to grant the departure, but because it determined a departure was not warranted in this case. In response to Fonseca's argument that he could not have foreseen the high purity of the drugs, the district court stated:

> [W]hat [the facts] suggest . . . is that the defendant had a significant role in getting these drugs. He also knew that he was getting drugs probably that were pretty pure . . . . [A]bsent some evidence from a witness who was involved in this, I have trouble buying your argument, counsel. It just doesn't jibe. What you want, you want me to give him a lower sentence, but this reason you're giving me doesn't make a lot of sense to me.

This statement belies Fonseca's contention that his argument was rejected as a matter of law. To the contrary, it suggests the district court considered the facts of this particular case and simply rejected Fonseca's argument on the merits. By noting evidence of Fonseca's ignorance was lacking, the court implicitly recognized the possibility that the result may have been different if his argument had been supported by credible evidence.[4] Given Fonseca's "significant role" in the offense, the district court found no reason to believe his unsubstantiated claim he did not know the purity of the drugs. Based on this assessment of the facts, the district court then determined Fonseca was not entitled to a downward

---

[4] Although Fonseca argues his statement at sentencing supports his claimed ignorance as to drug purity, the weight of the evidence is irrelevant to the question of whether the district court believed it had the legal authority to depart. Even if there was sufficient evidence to support a downward departure, the district court was not required to grant one.

departure. Evaluating the propriety of such a discretionary determination is beyond this court's jurisdiction. *See United States v. Sims*, 428 F.3d 945, 963 (10th Cir. 2005) ("Because the court clearly knew it had authority to depart on these grounds but simply elected not to do so in this case, we cannot entertain these issues on appeal.").

The district court's recognition of its legal authority to grant the requested departure is further demonstrated by the absence of any challenge to this authority by the government or the court. Aside from a brief reference in Fonseca's sentencing memorandum, the issue was never raised or discussed. Indeed, the government's argument at sentencing recognized the practice of other judges in reducing sentences based on lack of foreseeability of drug purity. Rather than arguing this point, however, the government instead focused on the facts of the case, contending the high price of the drugs gave Fonseca reason to be aware of their high purity. Likewise, the court was particularly concerned with the facts, finding it relevant whether the drug purity was in fact reasonably foreseeable under these circumstances. Thus, the record supports the conclusion that all parties involved, including the court, assumed the authority of the court to grant the departure if it determined one was warranted.

In support of his argument that the district court failed to recognize its discretion to grant a downward departure, Fonseca directs this court's attention to

two statements made by the district court at sentencing. The district court first

asked:

> My question is if somebody's acquiring illegal drugs . . . aren't they
> stuck with the consequences of what they acquire? I mean . . . if it's
> purer rather than less pure, aren't they stuck with those
> consequences? I'm trying to understand why I should give your
> client a break because he didn't realize the drugs he procured would
> be as pure as they turned out to be.

Later in the sentencing hearing, the court again explained its position regarding

Fonseca's argument for a downward departure:

> It would seem to me if someone is approached by somebody to get
> illegal drugs, they say, okay, I know where I can get illegal drugs,
> they then go get the illegal drugs and sell the illegal drugs . . . aren't
> they stuck with the reasonable conclusions of their actions, which
> would include that the actual drugs when tested turn out to be very
> pure, which drive up the Guideline levels under the advisory
> Guidelines?

Fonseca argues the use of the phrases "stuck with the consequences" and "stuck

with the reasonable conclusions of their actions" indicates a perceived lack of

legal authority to grant the requested departure.

Contrary to Fonseca's assertions, however, neither of these statements

constitutes an unambiguous statement that the court lacks legal authority to grant

the departure. Rather, they show only the district court's belief that the alleged

lack of foreseeability under circumstances such as these does not justify a

downward departure. Nothing in these statements indicates an understanding that

the court was not legally authorized to grant a downward departure if it had found

one to be warranted. In fact, the court's first question explicitly asks why the downward departure should be granted to this particular defendant. If the district court believed it had no legal authority to grant the departure in any case, the specific rationale for giving Fonseca "a break" would be irrelevant.

At most, the statements made by the district court are ambiguous. As noted above, ambiguous statements regarding the authority of the district court to depart from the Guidelines are interpreted as if the court were aware of the authority to depart. *Fortier*, 180 F.3d at 1231. The statements in this case can easily be distinguished from those made by the district court in *Mendoza*, the case on which Fonseca relies for the proposition that a sentencing court has authority to depart based on the defendant's lack of knowledge of drug purity. In that case, the district court stated, "[T]o make it clear, the Court believes that she has no discretion to depart downward on the argument counsel has made." *Mendoza*, 121 F.3d at 512. Likewise, the district court in *Sims* clearly explained, "The Court views this fact [that the defendant's offense conduct involves a serious threat of violence] as disqualifying it from permitting a reduction based on diminished capacity." *Sims*, 428 F.3d at 963. These are the kind of unambiguous statements required by this court and lacking in this case.[5] Because the district court did not

---

[5] In an effort to avoid the rule that an unambiguous statement is required, Fonseca essentially argues that because the evidence supported his claimed lack of knowledge, the district court's denial of the downward departure "can only be assumed" to be based on its perceived lack of discretion. Such an assumption, however, would directly contradict this circuit's precedent requiring an

unambiguously state it lacked the discretion to grant the requested downward departure, this court has no jurisdiction to review the denial of this departure.

## IV. Conclusion

For the foregoing reasons, this court **dismisses** the appeal of the sentence imposed by the district court.

---

unambiguous statement. While this court agrees with Fonseca that "no particular shibboleth" is required, it nevertheless requires defendants to point to some statements by the district court clearly evincing a perceived lack of authority.