FILED
United States Court of Appeals
Tenth Circuit

December 5, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

SILVIANO HOLGUIN,

      Defendant - Appellant.

No. 07-8034

(D. Wyoming)

(D.C. Nos. 06-CR-139-9-D/
06-CR-140-6-D)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HENRY**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.[**]
_____

      Silviano Holguin pleaded guilty to two separate indictments for conspiracy to possess with intent to distribute, and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Mr. Holguin was sentenced to a total of 228 months' imprisonment and 5 years' supervised release (168 months for the drug counts, and an additional 60 months for Possession of a Firearm During and in Relation to a Drug

_____

[*] This order and judgment is not binding precedent except under the doctrines of the law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* FED. R.APP. P. 34(f) and 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Trafficking Offense in violation of 18 U.S.C. § 924(c)(1)(A)(i)). On appeal, Mr. Holguin argues that the district court erred by giving him a two-level increase under U.S.S.G. § 2D1.1(b)(4), which applies when an offense involves the importation of methamphetamine. He argues that the government did not prove by a preponderance of the evidence that he knew the methamphetamine was imported. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and affirm.

## I. BACKGROUND

Mr. Holguin was charged with multiple methamphetamine trafficking offenses in two separate indictments. Though he initially entered not guilty pleas, he ultimately pleaded guilty to both. In preparation for sentencing, the probation office prepared a presentence investigation report ("PSR"), which calculated Mr. Holguin's offense level as 35 and placed him in criminal history category I. The PSR calculated the advisory guideline range for the two counts of conspiracy to possess with intent to distribute methamphetamine as 168-210 months in prison. The district court sentenced Mr. Holguin to 168 months in prison for the drug offenses and an additional consecutive 60 months for possessing a firearm during those offenses.

## II. DISCUSSION

In determining whether the district court properly applied the sentencing guidelines, we review its factual findings for clear error, and its legal conclusions de

novo. *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007). The district court's determination that Mr. Holguin was aware the drugs were imported is a factual determination we review for clear error.

U.S.S.G. § 2D1.1(b)(4) provides:

> If (A) the offense involved the importation of . . . methamphetamine or the manufacture of . . . methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels.

Mr. Holguin argues that the district court erred in applying the § 2D1.1(b)(4) enhancement, because the government did not prove that he was aware the drugs were imported. We decline to address the Government's contention that § 2D1.1(b)(4) does not incorporate a mens rea requirement, Aple's Br. at 22-27, because even if we assume that knowledge of the importation is a requirement, the district court did not clearly err in applying the enhancement.

In his plea agreement, Mr. Holguin concedes that he had been involved in a methamphetamine trafficking conspiracy with Donna Holguin (his wife) and Santiago Gonzalez-Cisneros. Rec. vol. XVI, at 25. The PSR describes surveillance evidence that Ms. Holguin and co-conspirator Claudia Hermosillo had, on at least one occasion, talked about the anticipated arrival of methamphetamine from Mexico. *Id*. vol. XVII, ¶ 50. Mr. Holguin did not object to this section of the PSR.

Further, at the sentencing hearing, Special Agent Steven Woodson testified that both wire interceptions and interviews with Ms. Hermosillo and Mr. Gonzalez determined

3

that their principal methamphetamine source was Remundo Garcia-Provencio, who resided in and provided the methamphetamine from Mexico. There were numerous phone conversations between Ms. Holguin and Ms. Hermosillo regarding the fact that the drugs came from Mexico and that the proceeds would be sent back there. When these conversations occurred, Mr. and Ms. Holguin were living together.

Finally, authorities seized one-quarter ounce of methamphetamine from Mr. Holguin during a traffic stop. Agent Woodson testified that there were many intercepted conversations between Ms. Holguin and Ms. Hermosillo concerning Ms. Holguin's debt to Ms. Hermosillo and that in virtually every one of those calls, Ms. Holguin told Ms. Hermosillo that she would have to address that debt with her husband, Mr. Holguin. Rec. vol. XV, at 20. In fact, after Ms. Hermosillo repeatedly called about this debt, Mr. Holguin got on the phone to demand that she stop bothering them about the money. *Id.* at 16.

Assuming, without deciding, that proof of knowledge is required, the district court did not commit clear error in holding that the government showed by a preponderance of the evidence that Mr. Holguin was aware that the methamphetamine was imported unlawfully.

## IV. CONCLUSION

Accordingly, we AFFIRM the district court's sentence, specifically the two-level enhancement under U.S.S.G. § 2D1.1(b)(4).

Entered for the Court,

Robert H. Henry
United States Circuit Judge