FILED
United States Court of Appeals
Tenth Circuit

February 4, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EVER JOSE DOMINGUEZ-RUBIO,

Defendant - Appellant.

No. 07-1410
(D. Ct. No. 1:06-cr-00360-WYD-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HOLLOWAY**, and **SEYMOUR**, Circuit Judges.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mr. Dominguez-Rubio pleaded guilty to illegal re-entry of a removed alien,

and the district court sentenced him to fifty-seven months' imprisonment. Mr.

Dominguez-Rubio challenges his sentence on both procedural and substantive

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

grounds. He first asserts that the Guidelines range was not properly calculated. He also claims the district court erred by not departing downward due to the unusual nature of his case. Finally, he argues that the district court abused its discretion by refusing to comply with the terms of his plea agreement and dropping his criminal history category only one level, from V to IV. *See* U.S.S.G. § 4A1.3(b).

We hold that the district court calculated the Guidelines range properly. We have no jurisdiction to review the district court's decision not to apply a discretionary departure. We can only review the substantive reasonableness of the sentence, and in doing so we conclude that the sentence is substantively reasonable. Finally, the district court did not abuse its discretion when it dropped Mr. Dominguez-Rubio's criminal history category to level IV instead of level III. We therefore take jurisdiction under 28 U.S.C. § 1291 and AFFIRM Mr. Dominguez-Rubio's sentence.

## I. BACKGROUND

Mr. Dominguez-Rubio has lived in the United States since age fifteen. He initially entered the country illegally but obtained legal resident status in 2000. He is married to a U.S. citizen, and their child is a U.S. citizen. In April 2001, Mr. Dominguez-Rubio's wife filed a Form I-130 "Petition for Alien Relative" to obtain permanent resident status for Mr. Dominguez-Rubio. The notary who prepared the petition did not file complete paperwork, however, and the petition

was denied in August 2003. Although the matter was then forwarded to an immigration judge, Mr. Dominguez-Rubio claims he was given no notice of that proceeding. In September 2004, the judge issued an order in abstentia, removing Mr. Dominguez-Rubio from the United States for ten years. Mr. Dominguez-Rubio says he was unaware of this order.

In November 2004, Mr. Dominguez-Rubio was charged with felony menacing. The victim testified that Mr. Dominguez-Rubio and another man cut him off in traffic and then beat him at the side of the road to the point that he briefly lost consciousness. Mr. Dominguez-Rubio pleaded guilty in February 2005 and was sentenced to ninety days in jail, plus two years' probation. In August 2005, Mr. Dominguez-Rubio was deported and was therefore unable to comply with the terms of his probation. His wife informed him that his probation was going to be revoked, and he re-entered the United States illegally.

In May 2006, Mr. Dominguez-Rubio was arrested on a felony warrant in Greely, Colorado, and he gave a false name. He later pleaded guilty to false reporting to authorities and to illegal re-entry of a removed alien. *See* 8 U.S.C. § 1326(a). The PSR calculated Mr. Dominguez-Rubio's offense level as 21, and his criminal history category as V. As part of the plea agreement, the government agreed not to oppose Mr. Dominguez-Rubio's request that the district court depart downward by assigning him a criminal history category of III. The government also agreed to recommend that he be sentenced at the bottom of the applicable

Guidelines range.

At sentencing, Mr. Dominguez-Rubio challenged the PSR's calculation of the offense level, which included a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). That enhancement applies when a defendant has been deported after committing a "crime of violence." *Id.* In this case it was based on the menacing charge. Mr. Dominguez-Rubio argued that the enhancement should not apply because he did not commit an aggravated felony. He also asserted that the menacing offense was not the reason for his deportation.

Mr. Dominguez-Rubio next argued for a discretionary departure under U.S.S.G. § 5K2.0, which covers circumstances that are not identified within the Guidelines. He stated that his situation was unique because he would have been a legal resident if not for mistakes by a notary, and because he returned to the United States to comply with his probation. He also argued for a discretionary departure based on cultural assimilation.

The government argued for the sixteen-level enhancement and against the discretionary departure. The district court agreed with the government on both counts, applying the enhancement and rejecting the discretionary departure. When the judge asked the government for its opinion on the proposed reduction to Mr. Dominguez-Rubio's criminal history score, the government's attorney replied, "Your Honor, I think I'm bound by my agreement not to oppose it. I don't think I should—I'm going to leave it at that." The district judge then

reduced Mr. Dominguez-Rubio's criminal history category by only one level, from V to IV. This reduction created a Guidelines range of fifty-seven to seventy-one months. When asked what sentence he would like for the court to impose, the government's attorney recommended a sentence at the bottom of the Guidelines range. The district court then imposed the recommended sentence of fifty-seven months.

On appeal, Mr. Dominguez-Rubio asserts three points of error. First, he argues the district court erred by applying the sixteen-level enhancement. Second, he contends that the district court erred by not departing downward based on the unusual circumstances of the case. Finally, he claims that the district court abused its discretion when it did not reduce his criminal history category to level III—a reduction the government had agreed not to oppose.

## II. DISCUSSION

We review sentences for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). After first ensuring a sentence is free from significant procedural error, we review it for substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, – U.S. –, 128 S. Ct. 586, 597 (2007).

A.    The Sixteen-Level Enhancement for a Crime of Violence

Mr. Dominguez-Rubio's first argument is procedural, in that he asserts that the district court did not calculate the Guidelines range properly. Specifically, he

argues that the district court should not have applied a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The enhancement was based on Mr. Dominguez-Rubio's previous conviction for menacing, which the court interpreted as a "crime of violence." *See id.* We review the district court's application of the Guidelines de novo. *United States v. Gonzalez-Coronado*, 419 F.3d 1090, 1094 (10th Cir. 2005).

Mr. Dominguez-Rubio argues that the enhancement is inappropriate because he was not convicted of an "aggravated felony." That argument is misplaced, however, because there is a separate enhancement for a defendant who previously was convicted of an aggravated felony. U.S.S.G. § 2L1.2(b)(1)(C).

The applicable Guidelines provision dictates a sixteen-level enhancement when "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence." *Id.* § 2L1.2(b)(1)(A)(ii). Because Mr. Dominguez-Rubio was deported after his conviction for menacing, the issue is whether menacing is both a felony and a crime of violence.[1] Both terms are defined in the application notes following § 2L1.2, and those definitions "are authoritative unless they are unconstitutional, violate a federal statute, or are inconsistent with, or a plainly erroneous reading of

_____

[1]Mr. Dominguez-Rubio also argues that the enhancement was inappropriate because he was not deported for the menacing conviction. The Guidelines, however, only require that he be deported "after" being convicted of a crime of violence; they do not require a causal relationship between the crime of violence and the deportation.

the guideline." *United States v. Hernandez-Garduno*, 460 F.3d 1287, 1292 (10th Cir. 2006).

A felony is "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2 cmt. n.2. "The felony definition applicable to § 2L1.2(b)(1)(A) is based on the maximum possible sentence under the particular state law, in contrast to the statutory definition of aggravated felony, which requires that the defendant was actually sentenced to prison for at least one year." *United States v. Cordova-Arevalo*, 373 F. Supp. 2d 1220, 1223 (D.N.M. 2004), *aff'd*, 456 F.3d 1229 (10th Cir. 2006).

Mr. Dominguez-Rubio was convicted of felony menacing-real/simulated weapon, which is a class 5 felony. *See* Colo. Rev. Stat. Ann. § 18-3-206(1)(a) (stating that menacing is a class 5 felony when committed "[b]y the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon"). Under Colorado law, a class 5 felony is punishable by one to three years' imprisonment. *Id.* § 18-1.3-401(1)(a)(V)(A). Therefore, Mr. Dominguez-Rubio's offense was punishable for a period greater than one year. Because the Guidelines use the word "punishable," the fact that Mr. Dominguez-Rubio was not actually punished for that period is immaterial. Thus, under the Guidelines definition, Mr. Dominguez-Rubio's menacing crime was a felony.

The next issue is whether menacing is also a "crime of violence." The

application notes to U.S.S.G. § 2L1.2 list several crimes as crimes of violence, and add to the definition "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 2L1.2 cmt. n.1(B)(iii). As defined by Colorado law, a conviction for menacing-real/simulated weapon constitutes a conviction for a crime of violence. The crime includes "the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." Colo. Rev. Stat. Ann. § 18-3-206(1)(a). Mr. Dominguez-Rubio, therefore, committed a crime of violence. By the clear wording of the Guidelines, the sixteen-level enhancement was appropriate. Mr. Dominguez-Rubio unlawfully returned to the United States after being deported following a conviction for a felony crime of violence. The question of whether his crime constituted an aggravated felony is irrelevant. The sentence was therefore procedurally reasonable.

B.      The Decision Not to Depart Under § 5K2.0

Mr. Dominguez-Rubio next argues that the district court abused its discretion when it declined to depart downward under U.S.S.G. § 5K2.0. That section allows for departures based on the factors listed in 18 U.S.C. § 3553(a), as well as other unusual circumstances that are not identified in the Guidelines. U.S.S.G. §§ 5K2.0(a)(1)(A), 5K2.0(a)(2)(B). Claiming that he would have been a lawful U.S. resident if not for a clerical error made by a notary, and that he only

returned to the United States illegally to comply with his probation, Mr. Dominguez-Rubio asserts that his case warrants such a downward departure.

We do not have jurisdiction to review a district court's discretionary decision not to depart downward. *United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006). We can, however, consider the circumstances presented in the motion for a downward departure in assessing the substantive reasonableness of the sentence. *Id*. Although Mr. Dominguez-Rubio did not expressly challenge the substantive reasonableness of his sentence, his argument that the Guidelines did not contemplate his circumstances is essentially a substantive reasonableness challenge, so we will consider that issue.

Because Mr. Dominguez-Rubio was sentenced within the applicable Guidelines range, which was correctly calculated, we apply a rebuttable presumption of substantive reasonableness. *Kristl*, 437 F.3d at 1054. In this case, the district court considered Mr. Domginguez-Rubio's lengthy criminal history and reduced his criminal history category by one, from V to IV. The court also sentenced Mr. Dominguez-Rubio at the bottom of the Guidelines range. The fact that Mr. Dominguez-Rubio applied to become a legal resident does not change the fact that he did not become one, that he committed several crimes while in the United States, or that he re-entered the country illegally. In addition, although Mr. Dominguez-Rubio claims that the reason he returned to the United States was to comply with his probation, he concedes that he made no effort to

return legally.

The district court expressed concern about the likelihood that Mr. Dominguez-Rubio would commit crimes in the future. After analyzing his criminal history—which includes, inter alia, convictions for assault, violation of a protection order, and menacing—we share that concern. We therefore conclude that the fifty-seven month sentence was reasonable.

C.    The Plea Agreement

Finally, Mr. Dominguez-Rubio argues that the district court "refused to follow the plea agreement," thereby abusing its discretion. Although Mr. Dominguez-Rubio has raised this issue for the first time on appeal, we review de novo a defendant's claim that a plea agreement has been violated. *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007).

Here, we find no error because neither the district court nor the government breached the agreement. The district court did not breach the plea agreement because it could not do so—it was not a party to the plea agreement. The government also did not breach the agreement. The government merely promised not to oppose Mr. Dominguez-Rubio's request that his criminal history category be reduced from V to III. As promised, the government did not oppose the requested decrease. When pressed by the judge on the issue, the government's attorney replied, "Your Honor, I think I'm bound by my agreement not to oppose [the reduction]. I don't think I should—I'm going to leave it at that." The judge

then asked the attorney to affirm that he did not have an argument in support of Mr. Dominguez-Rubio's requested two-level reduction, and the attorney replied, "That is correct, Your Honor, I merely say I don't oppose it." Even though the government did not support the reduction, it adhered to the agreement by not opposing it.

The plea agreement clearly explained that it was not binding on the court. As it had every right to do, the district court reduced Mr. Dominguez-Rubio's criminal history score by only one level. Therefore, neither the government nor the court committed any error related to the plea agreement.

## III. CONCLUSION

The district court correctly applied a sixteen-level enhancement to Mr. Dominguez-Rubio's offense level because he had returned to the United States illegally after being deported following his conviction for a felony crime of violence. We do not have jurisdiction to review the district court's decision not to apply a discretionary departure under U.S.S.G. § 5K2.0. We can review the sentence's substantive reasonableness, and we conclude that the sentence was reasonable. Finally, we hold that neither the government nor the court breached Mr. Dominguez-Rubio's plea agreement. For these reasons, we AFFIRM Mr.

Dominguez-Rubio's sentence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge