**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

TRAVIS WAGNER,

     Defendant-Appellant.

No. 13-8092
(D.Ct. No. 2:13-CR-00101-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Travis Wagner pled guilty to one count of being a felon in possession of a

firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He now appeals his

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, _res judicata_ and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

69-month downward variant sentence, claiming it is substantively unreasonable because the district court "did not vary downward anywhere near enough" to properly account for the sentencing factors in 18 U.S.C. § 3553(a). We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Wagner's sentence.

## I. Factual and Procedural Background

On October 21, 2012, at approximately 6:20 p.m., a pharmacist at the Medical Hill Pharmacy called the Gillette, Wyoming police department to report an attempted break-in through the pharmacy's drive-up window. Based on a description of the vehicle involved, a police officer stopped Mr. Wagner in his pickup truck less than a mile away from the pharmacy; at that time, Mr. Wagner's pupils were dilated and he later admitted he used a prescription drug the day of his arrest. Inside the vehicle, officers found various burglary tools, including a new yellow crowbar, new black stocking cap with eye holes cut out, new leather gloves, and a flashlight, along with a small locked gun safe on the front passenger seat and prescription bottles. An investigation at the pharmacy revealed the drive-up window had been partially pried open and yellow paint remained from the item used to pry it open. When interviewed, Mr. Wagner admitted he tried to break into the pharmacy and purchased the crowbar, stocking cap, and gloves at Walmart earlier that evening for the purpose of committing the burglary. After Mr. Wagner's arrest, officers executed a search warrant and, using the key found

in the vehicle's center console, opened the gun safe, finding a loaded Springfield XDM handgun, a Walmart bag, and a receipt for his purchase of the crowbar, stocking cap, gloves, and two prescription drugs. The receipt was time-stamped approximately 80 minutes before the reported break-in at the pharmacy. Officers also executed another search warrant at the residence where Mr. Wagner lives with his parents. As he acknowledges on appeal, in his basement bedroom officers found a loaded semi-automatic Glock handgun under his pillow, a sawed-off 12-gauge Remington shotgun leaning against the wall next to his bed, a .223-caliber semi-automatic Bushmaster rifle (capable of discharging a large-capacity magazine), a Kimber pistol in a drawer, gun cleaning supplies, and multiple types and amounts of ammunition in various locations throughout the room.[1]

Mr. Wagner pled guilty to being a felon in possession of a firearm (i.e., the Springfield handgun found in his vehicle); in his plea agreement, he stipulated he possessed the handgun in connection with the pharmacy burglary, acknowledging this may increase his offense level under U.S.S.G. § 2K2.1(b)(6)(B), and further stated he understood the calculation of his sentence may also be affected by the firearms seized at his residence. Following his guilty plea, a probation officer prepared a presentence report using the applicable 2012 Guidelines and calculated

---

[1] Authorities never charged Mr. Wagner with possession of these firearms but they were included in his relevant conduct and significantly increased his advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range, as discussed hereafter.

his base offense level at 20, pursuant to U.S.S.G. § 2K2.1(a)(5) and 26 U.S.C. § 5845(a), based on Mr. Wagner's possession of the sawed-off shotgun found near his bed. His offense level was increased two levels under § 2K2.1(b)(1)(A) for his possession of three to seven firearms; two levels under § 2K2.1(b)(3)(B) for possession of a sawed-off shotgun as a destructive device; and four levels under § 2K2.1(b)(6)(B) for possession of the Springfield handgun used in connection with the pharmacy burglary. The probation officer also reduced his sentence three levels under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 25, which, together with a criminal history category of IV, resulted in a Guidelines range of 84 to 105 months' imprisonment. The probation officer also pointed to Mr. Wagner's admission he is addicted to pain medication and alcohol and his belief his addiction created most of his substance abuse problems and criminal conduct. While the probation officer stated, "[t]here is no doubt he needs treatment," she also noted Mr. Wagner's participation in a number of treatment programs has not deterred his abusive conduct.

Prior to and at the sentencing hearing, Mr. Wagner argued the gun in his vehicle was in a locked safe, making its relationship to the burglary "marginal." The government presented the testimony of a detective who confirmed Mr. Wagner was in possession of, or had access to, the weapons and ammunition used

to calculate his sentence.[2]  After affirming the Guidelines range was 84 to 105

months' imprisonment and applying the sentencing factors in 18 U.S.C.

§ 3553(a), the district court granted a downward variance–equal to a one-level

reduction of his offense level–based on his addiction problems.[3]  While it

recognized Mr. Wagner's addiction problem as a reason for the variance, it

declined to vary further, noting the seriousness of Mr. Wagner's possession of

firearms (including a sawed-off shotgun and Bushmaster rifle) and the high-risk

situation of his committing a burglary with a firearm, causing the potential for

murder if the pharmacist had intervened.  It also determined the four-level

enhancement applied, given he had "access" to the gun and "carried" it with him

when he committed the burglary, as demonstrated by the Walmart receipt found in

---

[2]  It also presented the testimony of a special agent with the Bureau of Alcohol, Tobacco, and Firearms confirming the out-of-state manufacture of certain firearms.

[3]  While the record clearly demonstrates the district court applied a variance under the § 3553(a) sentencing factors, it used the nomenclature of a downward "departure," rather than a "variance."  To clarify, a sentence above or below the recommended Guidelines range based on an application of Chapters Four or Five of the Guidelines is referred to as a "departure," while a sentence above or below the recommended Guidelines range through application of the sentencing factors in 18 U.S.C. § 3553(a), as applied here, is called a "variance." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007) (overruled on other grounds, *U.S. Kaufman*, 546 F.3d 1242, 1270 (10th Cir. 2008)).  The unintentional misuse of the term "departure" does not, in this case, prevent our review on appeal, and we have jurisdiction to review such a variance for reasonableness under the § 3553(a) factors. *See United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006).

the safe showing he had opened the safe just prior to the burglary. It also noted Mr. Wagner did not point the gun at anyone and, if he had, another issue would have been involved in his sentencing. At this juncture, the government pointed out Mr. Wagner had already stipulated he possessed the gun in connection with the burglary; Mr. Wagner's counsel then confirmed this point by reviewing the plea agreement and apologized for even raising the issue. As a result, the district court did not rule on the matter and proceeded to calculate the sentence. It applied an offense level of 24 and a sentence at the bottom of the newly-calculated Guidelines range at 77 months; this, together with credit for the eight months Mr. Wagner served on a concurrent state sentence on the burglary conviction, resulted in a final sentence of 69 months' imprisonment.

## II. Discussion

Mr. Wagner now appeals his sentence, claiming his sentence is substantively unreasonable based on the four-level enhancement for his possession of a gun in connection with the burglary. In support, he claims: 1) the gun was "most probably" or "very likely" "in a locked safe in his truck at that time" and "there was no proof" he had the gun "in hand at the pharmacy" or was in the truck where the safe was located when he tried to pry open the drive-through window; and 2) the safe, which required a key, was a "powerful check" against the gun's "impulsive or quick use," thereby lessening the potential of facilitating a felony offense. While he admits "it is *possible*" he "could have had

the gun with him when he walked up to the window" and "put it back in the safe on returning to his truck," he suggests his "main interest would have been in getting away from the pharmacy, and not in putting the gun back in the safe," and points out he did not have much time to put the gun in the safe given the small amount of time between his aborted burglary and when the police stopped him.

Mr. Wagner also claims a larger variance is necessary because, as the district court was aware, his prior record consists of non-violent offenses caused by his history of addiction, and he is a much better person when sober. While he previously had a gun in his vehicle when convicted for driving under the influence, he points out that he was only twenty years old at that time and it occurred twelve years before his instant arrest. In addition, he states that while the district court gave his addiction "mitigating weight," it did not vary enough given its recognition he has fine qualities when sober.

We review a sentence for reasonableness, giving deference to the district court under an abuse-of-discretion standard. *See United States v. Smart*, 518 F.3d 800, 802-03, 805 (10th Cir. 2008). Thus, we review "'all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse of discretion standard,'" in which we afford substantial deference to the district courts. *Id.* at 806 (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "Our appellate review for reasonableness includes ... a substantive component which relates to the length of the resulting sentence." *Id.*

at 803. We review the district court's interpretation and application of the sentencing guidelines de novo and review the court's factual findings for clear error. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them," but must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Smart*, 518 F.3d at 808 (internal quotation marks omitted). We do not require that the § 3553(a) factors "reach some specific level of evidentiary weight," and "although a district court must provide reasoning sufficient to support the chosen variance, it need not necessarily provide 'extraordinary' facts to justify *any* statutorily permissible sentencing variance." *Id.* at 807.

Here, the district court outlined the factors it considered in sentencing Mr. Wagner, including the nature of the crime and his history and characteristics. This included Mr. Wagner's addiction problem as a reason for a variance and the seriousness of the instant offense and his possession of firearms, including a sawed-off shotgun and Bushmaster rifle, as a reason for no further reduction. In so doing, it noted the high degree of risk involved in committing a burglary with a firearm, including the potential for murder. In imposing the sentence, it is clear it

listened to and rejected Mr. Wagner's arguments in support of a larger variance.[4]

With respect to Mr. Wagner's argument he did not use the gun in connection with the burglary, both the evidence in the record and his stipulation in the plea agreement clearly establish he possessed the gun at the time of the burglary. He also had possession of the key to the gun safe which was in his vehicle when he drove to the pharmacy. His hypothetical scenarios as to whether he removed the gun from the safe, left his vehicle in connection with the burglary, or had time to return his gun to the safe, are speculative and insufficient to warrant a reduction or otherwise provide the level of proof necessary for a reduction. As the district court concluded, he had possession of the gun, as shown by its proximity to him in the vehicle at the time of the burglary, and he had access to it, as demonstrated by the key in the console of the vehicle.

Moreover, even without such evidence, Mr. Wagner stipulated he possessed the gun in connection with the burglary, and, after raising the issue at the sentencing hearing, he essentially withdrew the issue before the district court

---

[4] "The sentencing court ... is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." *United States v. Cordova,* 461 F.3d 1184, 1189 (10th Cir. 2006) (internal quotation marks omitted). Instead, the district court must "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), and satisfy us, as it has here, that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

could rule on it. His attempt to now request a further variance on the same issue is akin to a waiver and an "invited error." Waiver is the "intentional relinquishment or abandonment of a known right," which occurred when Mr. Wagner withdrew his objection based on his prior stipulation. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1273 (10th Cir. 2007) (internal quotation marks omitted). An invited error "prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was in error." *United States v. Lopez-Medina*, 596 F.3d 716, 733 n.10 (10th Cir. 2010) (internal quotation marks omitted). Here, Mr. Wagner challenges the district court's inaction in failing to give him a downward variance based on the very issue he previously withdrew before it could make a ruling. Our prior cases make it clear that this kind of waiver bars a defendant from appealing an invited error. *See Carrasco-Salazar*, 494 F.3d at 1273. In addition, we have held that once a defendant's guilty plea is entered and accepted by the court, he is bound by the plea agreement, subject only to provisions regarding its withdrawal. *See United States v. Novosel*, 481 F.3d 1288, 1293 n.3 (10th Cir. 2007). Thus, Mr. Wagner is bound by his stipulation that he possessed the gun in connection with the burglary and there was no reason for the district court to grant a further variance in conjunction with that stipulation.

As to Mr. Wagner's other claim concerning his addictions, the district court had mitigating information on his addiction and considered his argument his

addiction to drugs drove him to commit this and his prior crimes; none of his prior crimes were violent; and he is a different person when sober. It clearly relied on such information when it reduced his sentence. However, it is evident it also determined a reduction of only one level was warranted when also considering the other § 3553(a) factors, including the seriousness of the instant offense, which included possession of a gun in the commission of a burglary where an individual occupied the building he attempted to burglarize. As previously noted, we may not examine the weight a district court assigns to the various § 3553(a) factors or its ultimate assessment of the balance between them. Instead, we give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Here, its rationale is sufficiently compelling to support the degree of the variance, given it has satisfied us it considered the parties' arguments and the § 3553(a) sentencing factors and had a reasoned basis for the variant sentence given. For these reasons, Mr. Wagner has not demonstrated his below-Guidelines sentence is substantively unreasonable for the purpose of warranting reversal on appeal.

III. Conclusion

Accordingly, we **AFFIRM** Mr. Wagner's 69-month term of imprisonment.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-11-